IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND OF ARKANSAS, INC., <br><br> and <br><br> LARRY H. WAYLAND, <br><br>           Plaintiffs, <br><br> v. <br><br> MARK PRYOR, as he is Attorney General of the State of Arkansas, <br><br>           Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 14 1999
JAMES W McCORMACK, CLERK
By: _____
DEP. CLERK

LR-C- 99-777

Case No. _____

COMPLAINT

This case assigned to District Judge Moody
and to Magistrate Judge _____

## I. NATURE OF THE CASE

1. This is a civil action wherein Plaintiffs pray for a declaratory judgment as well as a preliminary and permanent injunction to restrain Defendant from acting under color of state law to deprive Plaintiffs herein of rights and privileges secured to them by the Constitution of the United States. Plaintiffs request injunctive relief to protect these rights and to preserve the status quo.

## II. JURISDICTION

2. Plaintiffs bring this action to redress deprivations by Defendant acting under color of state law of certain rights secured to Plaintiffs by the First and Fourteenth Amendments of the United States Constitution.

3. Jurisdiction is therefore conferred upon this Court pursuant to Title 28 U.S.C. §1331; Title 28 U.S.C. §1343 (a) (3) and (4); and Title 42 U.S.C. §1983.

1

## III. VENUE

4.  Venue properly lies with this Court pursuant to Title 28 U.S.C. §1391(b) since a substantial part of the events giving rise to this claim occurred in the Eastern District of Arkansas.

## IV. DECLARATORY RELIEF

5.  Authority for declaratory relief sought herein by Plaintiffs is conferred upon this Court by Title 28 U.S.C. §2201 and by Rule 57 of the Federal Rules of Civil Procedure.

6.  Plaintiffs are entitled to recovery of their attorneys' fees and costs in this matter pursuant to 42 U.S.C. §1988.

## V. PARTIES

7.  Plaintiff National Federation of the Blind of Arkansas, Inc. (hereinafter "NFB") is an Arkansas not-for-profit corporation with tax exempt status under §501(c)(3) of the Internal Revenue Code, organized to assist persons who are blind through a series of programs, including but not limited to, vocational programs and advocacy. The organization has almost 125 members throughout the state of Arkansas, whom it has served since 1957. Attached hereto and marked Exhibit "A" and incorporated herein by reference is an affidavit of Chris McKenzie, President of the National Federation of the Blind of Arkansas, Inc., which sets forth her concerns over the limitation imposed on constitutionally guaranteed freedom of speech activities of Plaintiff NFB.

8.  Plaintiff Larry H. Wayland is a resident of Arkansas and receives calls from charities soliciting support and vendors of commercial goods and services. His concerns about the imposition of limitations on his private telephone conversations is more fully set out in his affidavit attached hereto as Exhibit "B" and incorporated herein by reference.

9.  Defendant, Mark Pryor, is the Attorney General of Arkansas and is charged by law with the enforcement and administration of the Arkansas statutes, and has an interest in this

proceeding and any issues herein. Defendant is named in his official capacity only.

## VI. FACTUAL ALLEGATIONS

10.   On April 7, 1997, Governor Mike Huckabee signed House Bill 2136 (attached hereto as Exhibit "C" hereinafter referred to as the "Act") into law. The Act is codified as Arkansas Statute §4-99-201.

> If the person receiving the telephone call indicates that he or she does not want to hear about the charity, goods, or services, the caller shall not attempt to provide additional information during that conversation about the charity, goods or services.

Exhibit "C" § 1(a)(2).

11.   The challenged Act, on its face, creates impermissible barriers to the exercise of otherwise protected First Amendment activities.

12.   The challenged Act mandates that calls made to Arkansas residents by charities and others for solicitation of support and/or for the sale of goods or services, must be terminated immediately upon an indication of disinterest by the listener under threat of criminal sanctions. This mandate operates regardless of the true nature or desire of the Arkansas recipient who receives the telephone call.

13.   The Plaintiff NFB is an Arkansas nonprofit organization acting as a charity to help improve the quality of life of its members through advocacy and by heightening the awareness of society to the issues that face blind Arkansas residents. The Plaintiff NFB has found the use of the telephone to be an effective medium of communication with residents of the state of Arkansas from both from an economic and interactive perspective. (*See* Affidavit of Chris McKenzie attached hereto as Exhibit "A").

3

14.   Because of the limited means available to the Plaintiff NFB, communication with Arkansas residents by telephone is frequently coupled with an appeal for support, which may or may not include the offer for sale of goods or services. (*See* Affidavit of Chris McKenzie attached hereto as Exhibit "A").

15.   Plaintiff Larry H. Wayland is blind and depends upon the telephone in his home as a primary means of communication. He accepts or rejects telephone appeals for charitable support and for the sale of goods or services as he may determine, and does not believe governmental intervention into his private, lawful telephone conversations is necessary or proper. He feels that the presence of "do-not-call" rights and his own control over his telephone are sufficient tools to curtail unwanted telephone calls.

16.   The challenged Act prohibits the Plaintiff NFB, and others similarly situated, from delivering its full message of advocacy, education and persuasion because of the following provision contained in the Act, to-wit:

> If the person receiving the telephone call indicates that he or she does not want to hear about the charity, goods, or services, the caller shall not attempt to provide additional information during that conversation about the charity, goods or services.

Exhibit "C" § 1(a)(2).

17.   Plaintiff NFB is a charity within the meaning of the Act and does, from time to time, choose to contact Arkansas residents by use of the telephone to engage in advocacy and solicitation, and would like to be able in the future to also consider the sale of goods or services in conjunction therewith. (*See* Affidavit of Chris McKenzie attached hereto as Exhibit "A").

18.   The challenged Act prematurely terminates telephone conversations at a certain point, despite the fact the speaker, who is engaged in fully protected speech, has not completed the

presentation and the recipient of the telephone call, while not initially interested, has not disconnected and is willing to consider being persuaded. Plaintiffs believe that the advocacy which NFB engages in is at the heart of the speech protected by the First Amendment. (*See* Affidavits of Chris McKenzie and Larry H. Wayland as Exhibits "A" and "B").

19. The challenged Act forecloses the right of an Arkansas resident to receive a telephone call from Plaintiff NFB, and others similarly situated, and to make the ultimate decision as to whether the conversation should be continued or terminated. Freedom of speech, guaranteed by the First and Fourteenth Amendments to the Constitution of the United States, not only means the right to speak but also the freedom to listen or not listen to the speech of others, in one's own discretion — and not by government fiat.

20. The challenged Act does not set forth with specificity at what point lawful speech must terminate as to give proper notice to the average Arkansas resident that they may be engaged in criminal conduct. This uncertainly will act to "chill" otherwise protected speech.

## COUNT I.

### Content-Based Restriction of Protection Speech

21. Plaintiffs restate and re-allege paragraphs 1 through 20 and incorporate the same by reference as if fully set out herein.

22. Plaintiff NFB engages in speech activities that include an appeal for support from Arkansas residents. These activities include contacting Arkansas residents to advocate the charitable causes of the organization and solicit support for those causes, independently or in conjunction with the sale of goods or services.

23. Plaintiff NFB's activities are a form of free speech fully protected by the First Amendment. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 789 (1988); *Secretary of*

*State of Maryland v. Joseph H. Munson Company, Inc.*, 467 U.S. 947 (1984); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980).

24.     Plaintiff NFB is a nonprofit organization operating within the State of Arkansas to advance charitable purposes in the area of services and education for the blind and education of the public regarding the issues faced by the blind.

25.     Plaintiff NFB advances its charitable purposes by contacting Arkansas residents by telephone to educate, advocate, and appeal for support. It may also choose to couple these calls with the offer of the sale of goods or services as a means to acquire additional resources to fund its program service.

26.     Plaintiff NFB has found that the most economically effective manner to raise public interest in these programs, and to obtain support and advocacy for those programs is to conduct person-to-person appeals using telephone solicitations. By necessity, these appeals involve both advocacy and education regarding the charitable purposes of the organization and solicitation of support for the organization and its causes.

27.     Plaintiff NFB's telephone appeal combines the functions of advocacy and solicitation of support in its content and, therefore, is regulated by the Act and subject to its restrictions which silence the appeal at a set point. The Act requires Plaintiff NFB to alter the content of its presentations to Arkansas residents by prematurely ending presentations that contain advocacy and appeals, thereby denying Plaintiff NFB an opportunity to persuade Arkansas residents of the worthiness of its cause. Because blind people only have a limited number of communication media available to them, limitations imposed upon the telephone are of primary concern.

28.     An inherent part of advocacy is persuasion. By prohibiting Plaintiff NFB, and others similarly situated, from engaging in persuasion in the context of fully protected speech activities,

6

Defendant has restricted Plaintiff NFB in the exercise of its First Amendment rights. If contacts made by Plaintiff NFB to Plaintiff Larry H. Wayland included only advocacy for causes in its content and did not include a solicitation of support, alone or in conjunction with the sale of goods or services, it would not be regulated by the Act. Therefore the challenged provision of the Act is content based.

29. As a content-based restriction of fully-protected speech, the Act is subject to strict scrutiny. The Act must, therefore, be narrowly tailored by the least intrusive means available to further a compelling purpose which the government is entitled to protect.

30. It is assumed that the Act, because it has potential criminal sanctions, is intended to prevent fraud which is a compelling government purpose. The Act, however, is not narrowly tailored, nor is it the least restrictive means available to further this purpose. Fraud is already criminalized under other sections of Arkansas law; *e.g.*, Ark Stat. §§ 4-88-110, 4-89-102, 4-99-101, *et seq*. These sections do not punish speakers in advance of their utterances.

31. Because the Act is not narrowly tailored to further a compelling government purpose in the least restrictive means available, it is unconstitutional.

## Count II. Prior Restraint of Protected Speech

32. Plaintiffs restate and re-allege paragraphs 1 through 31 and incorporate the same by reference as if fully set out herein.

33. The Act is a content-based restriction of speech, and will interfere with the solicitation of support and advocacy by Plaintiff NFB by interrupting and silencing Plaintiff NFB's appeals at a point when a full presentation has not yet been made.

34. By silencing Plaintiffs' fully-protected speech and potentially cutting off presentations under the threat of criminal prosecution, the Act is a form of prohibited prior restraint.

7

Enforcement of the Act will result in an unconstitutional prior restraint of protected speech in violation of the First Amendment and Fourteenth Amendments of the United States Constitution. The threat of potential criminal prosecution on otherwise fully lawful speech activities creates a prohibitive "chilling effect" that will deter others from exercising their rights guaranteed under the First and Fourteenth Amendments of the United States Constitution.

35. The Act will also abruptly terminate otherwise lawful conversations that Plaintiff Larry H. Wayland would like to continue in the privacy of his home. Freedom of speech means the right to listen as well as the right to speak.

36. Prior restraints of protected speech are abhorrent to the First Amendment and bear "a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). Even if the speech is purely commercial, the Act creates a prohibited prior restraint. *See New York Magazine v. Metropolitan Transport Authority*, 136 F.3d 123, 131 (2nd Cir. 1998).

37. Prior restraints are only allowed in narrow circumstances, the test for which is set forth in *Freedman v. Maryland*, 380 U.S. 51 (1965). Commercial speech is also afforded constitutional protection from prior restraint. *See Central Hudson Gas & Electricity v. Public Service Commission of New York*, 447 U.S. 557 (1980) and *44 Liquormart, Inc. and Peoples Super Liquor Stores, Inc. v. Rhode Island and Rhode Island Liquor Stores Assoc.*, 517 U.S. 484 (1996) and *New York Magazine v. Metropolitan Transport Authority, supra.*

38. The Act does not provide for the procedural safeguards set forth in *Freedman* and its progeny, to-wit:

    a. the Act is not narrowly drawn, reasonable and definite so as to include only prohibited speech;

    b. the Act does not provide that the government must promptly seek an injunction to restrain dissemination of prohibited speech; and

    c.    the Act does not mandate that such speech may be silenced only after a prompt and final judicial determination.

39. If commercial speech is otherwise lawful and not misleading the government may only regulate it to advance a substantial interest and then the regulation must: (1) directly advance the state's interest involved, and (2) do so in a manner less intrusive than other available remedies. The challenged provision does not meet this test. *See Central Hudson Gas & Electric*, 447 U.S. 557 at 564.

40. The Act contains no provision for an advance determination that the speech it will silence is unprotected; in fact, it is well-established that all the speech involved here is protected by the First and Fourteenth Amendments unless first proven to be fraudulent or otherwise unprotected.

41. The Act does not provide for these procedural safeguards prior to imposition of its prohibitions and, therefore, should be struck down as an unconstitutional prior restraint of protected speech.

42. The Act does not directly advance a legitimate and substantial interest by the least intrusive means available. Logically, therefore, the Act cannot meet strict scrutiny standards.

<u>Count III. Overbreadth</u>

43. Plaintiffs restate and re-allege paragraphs 1 through 42 and incorporate the same by reference as if fully set out herein.

44. The challenged Act is unconstitutionally overbroad, sweeping within its coverage lawful protected speech, thereby creating a "chilling effect." *See Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940).

45. In the context of charitable solicitations, the Supreme Court has held that overbroad statutes create the risk that speakers may refrain from protected activity rather than risk punishment

for conduct violative of the prohibition. *Munson*, 467 U.S. at 956. The Act eliminates the ability to persuade, which is an essential element of advocacy.

46. The Act is broadly drawn to prohibit, in advance of utterance, fully protected speech including advocacy, education and the solicitation of support, as well as the offering of goods or services, with no showing that either type of activity is unprotected by the First Amendment.

47. The Act creates a chilling effect on speakers who will refrain from contacting Arkansas residents entirely rather than risk criminal prosecution under its provisions. Arkansas residents will be deprived of the opportunity to learn, advocate and be persuaded to support causes and/or ideas, and/or purchase legal goods or services.

48. The Act is overbroad because it reaches a substantial amount of constitutionally-protected conduct, and should not be enforced until the statute is narrowed to reach only unprotected activity.

## Count IV. Equal Protection

49. Plaintiffs restate and re-allege paragraphs 1 through 48 and incorporate the same by reference as fully set out herein.

50. Plaintiff NFB has chosen to combine the functions of advocacy in support of its charitable purposes and the solicitation of support for those purposes in its telephone contacts with Arkansas residents. Exhibit "A," ¶8.

51. Plaintiff NFB and other small charities are forced to combine the functions of advocacy and solicitation for support in their contacts with Arkansas residents because it is more economical to combine these functions than to perform them separately. Likewise, the combination of the same with the sale of goods or services may enable Plaintiff NFB to reach those it might not able to otherwise contact. Exhibit "A," ¶¶4, 6, 8, 9 and 10.

52. By applying restrictions solely to charities which combine these functions in the course of their telephone activities, Defendant discriminates against charities that cannot afford to conduct separate campaigns for advocacy and solicitation based on the content of those charities' speech.

53. Because the Act treats some speakers differently than others without sufficient justification, it violates the Equal Protection clause of the Fourteenth Amendment. *Police Department of Chicago v. Mosley*, 408 U.S. 92, 97 (1972).

54. The Act does not apply restrictions to charities or other speakers which contact Arkansas residents by telephone, but do not solicit a contribution, or offer goods or services, nor does the Act apply restrictions to charities which solicit donations through other media or door-to-door without or without the sale of goods or services. Likewise, the sellers of goods or services that use other forms of media or means of contact are not similarly regulated.

55. Defendant has not advanced a sufficient reason for discrimination against Plaintiffs and others similarly situated, in exercise of the fundamental right to engage in free speech activities that are otherwise lawful.

56. The Act violates the equal protection clause of the United States Constitution by discriminating against Plaintiffs, and others similarly situated, based on the content of their speech, and how they choose to exercise protected speech rights.

57. This restriction is subject to strict scrutiny as a form of discrimination among speakers.

58. The restriction is not narrowly tailored to further a compelling state interest, and violates the First and Fourteenth Amendments of the United States Constitution

### Count V. Vagueness

59. Plaintiffs restate and re-allege paragraphs 1 through 58 and incorporate the same by reference as fully set out herein.

60. The Act is impermissibly vague in that people of ordinary intelligence may have to guess at the meaning of certain terms, words or phrases, including but not limited to the specific definition of the phrase "...indicates that he or she does not want to hear..." Exhibit "C" §1(a)(2). An indication may be given by express words, equivocal words, a sigh, hesitation, or even by a tone of voice, all of which must be interpreted correctly by the speaker under threat of criminal prosecution.

61. The Act does not adequately define this phrase resulting in a situation where Plaintiffs, and other similarly situated, must guess at the meaning and application of the Act. For example, it is uncertain whether an equivocal response or prolonged silence by the consumer triggers the requirement to discontinue the conversation.

62. The lack of notice of what behavior is illegal under the Act will chill the exercise of a fundamental right, *i.e.* fully-protected speech, by failing to provide notice of what behavior is criminal and subject to sanction.

63. The notice of prohibited conduct is deficient because it is imprecise and, therefore, will not prohibit arbitrary and/or selective enforcement on a constitutionally suspect basis by Defendant or his subordinates. Precision must be the touchstone of First Amendment regulation. *See NAACP v. Button*, 371 U.S. 415, 438 (1963).

64. The Act burdens free speech in terms that are so vague as to allow the inclusion of protected speech within their prohibitions leaving individuals without clear guidance as to the nature of speech for which they can be punished. This vagueness will cause some speakers to refrain from

speaking entirely rather than risk criminal prosecution under the Act.

65.  Because the Act is unconstitutionally vague, it violates the First Amendment and Fourteenth Amendments of the United States Constitution.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiffs pray the Court, under one or all of the aforedescribed counts, to issue the following:

a. A preliminary and thereafter a permanent injunction enjoining the enforcement of the Act by Defendant, its agents and employees against Plaintiffs, and others similarly situated;

b. A declaration that the challenged legislation on its face violates the First and Fourteenth Amendments of the United States Constitution;

c. A declaration that the Defendant has violated the Plaintiffs' constitutional rights and as a result, the Plaintiffs have been damaged;

d. An order requiring that the Defendant pay all costs, interest and attorney's fee as may be incurred with this civil action pursuant to 42 U.S.C. §1988; and

e. An order providing such other and further relief as the Court deems just and proper and for the purpose of redressing Plaintiffs' grievances.

Respectfully submitted,

MITCHELL, WILLIAMS, SELIG, GATES,
& WOODYARD, P.L.L.C.

By: _____
Sherry P. Bartley
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525
Telephone: (501) 688-8800
Facsimile: (501) 688-8807

OF COUNSEL:

COPILEVITZ & CANTER, L.L.C.

By: _____
Errol Copilevitz
William E. Raney
423 W. 8th Street, Suite 400
Kansas City, MO 64105
Telephone: (816) 472-9000
Facsimile: (816) 472-5000

ATTORNEYS FOR PLAINTIFFS

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# Exhibits Attached to Original Document in Court's Case File